UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

King Kaseen,

     Plaintiff,

     v.                                                                     Civil Action No. 2:23-cv-416-wks-kjd

Phil Scott, Nicholas Deml, Jennifer
Sprafke, et al.,

     Defendants.

## REPORT AND RECOMMENDATION
(Docs. 63, 65, 69)

Pro se Plaintiff King Kaseen, who at the time the Complaint was filed was a prisoner,[1]

brings this action under 42 U.S.C. § 1983 against thirty Defendants in their individual and

official capacities, seeking monetary damages against each Defendant for the alleged violation of

his Eighth Amendment rights. He also appears to assert claims for conspiracy to violate his

Eighth Amendment rights.[2] In addition to his demand for compensatory damages from each

Defendant, Plaintiff also generally requests injunctive relief.

Plaintiff names the following Defendants in this action: Phil Scott, Governor of Vermont;

Nicholas Deml, Commissioner of the Vermont Department of Corrections (DOC); Jennifer

---

[1] According to a Notice of Change of Address filed in December 2024 (Doc. 71), it appears that Plaintiff is no longer in custody.

[2] Plaintiff may also be claiming disparate treatment in the correctional setting based on gender. (Doc. 12, ¶¶ 40, 45, 52, 126.) Although the Court is obligated to liberally construe a pro se plaintiff's allegations to raise the strongest arguments suggested, *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007), to the extent Plaintiff may be raising an Equal Protection claim, the allegations are insufficient to state a cognizable claim. The limited allegations are either vague and conclusory (Doc. 12 at 8, ¶ 45), or do not specify which Defendants are liable for the alleged unequal treatment (*id.*, ¶¶ 45, 52, 75). Therefore, this Report and Recommendation focuses the analysis on the asserted Eighth Amendment claims.

Sprafke, identified in the Amended Complaint as "PREA[3] (Vermont);" Rick Byrne, Corey Stone,

Dave Turner, identified as Vermont DOC "out of state caseworkers;" Jill Martin, Joshua O'Hara,

Emily Tredeau, Rubin Jennings, identified as "Prisoners' Rights;"[4] Mike Lyon, [James][5]

Elwood, [C]athy [Grybos], [Timothy] Wilke, identified respectively as superintendent,

supervisor, caseworker, and corrections officer at Vermont's Southern State Correctional Facility

(SSCF), Greg Hale, Lisa Madden, [Nicholas] Bogovich, identified respectively as

superintendent, assistant superintendent, and corrections officer at Vermont's Northwest State

Correctional Facility (NWSCF); [First Name Unknown] Hawkins, D. Johnson, [First Name

Unknown] Baker, [First Name Unknown] Bird, identified respectively as supervisor, unit

manager, investigator, and warden of Tallahatchie County Correctional Facility (TCCF) in

Mississippi; Hannah [Pfadenhaur] Dawn M[i]ller, Leeanna Fomkin, identified respectively as

"central office," intervention services coordinator, and lead interventionist; Trish P., Mitch [Last

Name Unknown], Cassie [Last Name Unknown], identified as NWSCF interventionists, Greg

[Young] Nat[han] [Kirk], and [Alyssa] Ross, identified respectively as "VCI Boss, VCI second-

in-command, and VCI supervisor."

The State of Vermont has filed a Motion to Dismiss on behalf of Defendants Phil Scott,

Nicholas Deml, Jennifer Sprafke, Rick Byrne, Corey Stone, Dave Turner, Jill Martin, Joshua

O'Hara, Emily Tredeau, Rubin Jennings, Mike Lyon, James Elwood, Greg Hale, Cathy Grybos,

---

[3]  "PREA" refers to the Prison Rape Elimination Act, 34 U.S.C. §§ 30301 *et seq.*

[4]  Plaintiff alleges in the Amended Complaint that these individuals served as his attorneys during the relevant time period. (Doc. 12 at 11, ¶ 77.)

[5]  In its Motion to Dismiss on behalf of the State of Vermont Defendants, the Office of the Attorney General has provided identifying information for State of Vermont Defendants identified in the Amended Complaint by only first or last name. The brackets in this section signify either identifying information for the State of Vermont Defendants provided by the Office of the Attorney General or names for which the Court has no further identifying information.

Timothy Wilke, Nicholas Bogovich, Hannah Pfadenhaur, Dawn Muller, Gregory Young, Nathan Kirk, and Alyssa Ross (referred to in this Report and Recommendation as "Vermont State Defendants"). (Doc. 63.) The Vermont State Defendants request dismissal of the Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the following grounds: (1) sovereign immunity bars Plaintiff's official-capacity claims against State officials; (2) the individual-capacity claims are legally insufficient because Plaintiff has not plausibly alleged that the Vermont State Defendants were personally involved in the alleged constitutional violations; (3) the individual-capacity claims are legally insufficient because the Vermont State Defendants are entitled to qualified immunity; and (4) the asserted claims against the Vermont Prisoners' Rights Office Defendants fail because these Defendants cannot be deemed to have acted "under color of state law" as required to assert a cognizable claim under § 1983.

Plaintiff requests that the Court appoint counsel to assist him in this action. (Doc. 65.) Plaintiff has also filed a document styled as a "Vortical Motion to Terminate the Defendants 360°" (Doc. 69), which the Court interprets to be a surreply to Defendants' Motion to Dismiss. The Vermont State Defendants assert that the "Vortical Motion" is an unauthorized surreply and should not be considered. (Doc. 70 at 1.) To the extent that the "Vortical Motion" requires a response, the Vermont State Defendants rely on the grounds asserted in their Motion to Dismiss in requesting dismissal of the "Vortical Motion." (*Id*. at 2.)

For the reasons set forth below, I recommend that the Vermont State Defendants' Motion to Dismiss (Doc. 63) be GRANTED. I further recommend that Plaintiff's request for appointed counsel (Doc. 65) be DENIED without prejudice and Plaintiff's "Vortical Motion to Terminate the Defendants 360°" (Doc. 69) be DENIED as an unauthorized surreply. Finally, I recommend that Plaintiff be granted leave to file a second amended complaint.

## Procedural History and Background Facts

On November 27, 2023, the Court granted Plaintiff's motion for leave to proceed in forma pauperis and docketed the Complaint. (Doc. 5.) On the same date, the Court granted Plaintiff's Motion for Leave to File an Amended Complaint. (Doc. 8.) On December 19, 2023, Plaintiff filed a Motion for Leave to File an Amended Complaint (Doc. 10), which the Court construed as his Amended Complaint and ordered that the Amended Complaint be served on Defendants (Text-only Order 11).[6]

The twenty-page Amended Complaint asserts numerous allegations of allegedly unconstitutional conduct against Defendants.[7] Many of the allegations do not differentiate among the Defendants; other allegations name specific Defendants responsible for the claimed misconduct. The Court summarizes the factual allegations against the Vermont State Defendants as follows:

Governor Phil Scott (Doc. 12, ¶¶ 40–50, 126)

Plaintiff alleges that Governor Scott "failed to protect" him when he was transferred to serve his sentence out of state. Although the Amended Complaint is not entirely clear, it appears that Plaintiff attributes a series of instances of misconduct to Governor Scott, including the following: Plaintiff was the victim of sexual assault by a staff member at the out-of-state corrections facility; the sexual assault was not adequately investigated; he did not receive the same educational opportunities as other inmates; he was placed "in a hostile atmosphere;" he did

---

[6]  In his Opposition to Vermont State Defendants' Motion to Dismiss, Plaintiff includes several pages of additional factual allegations. (Doc. 64 at 8–15.) However, the Court may not consider new facts raised in an opposition to a motion to dismiss. *See Neisner v. Town of Killington*, No. 1:16-cv-4-jgm, 2016 WL 7441637, at *2 (D. Vt. Dec. 27, 2016) ("Plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss.") (quoting *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013)).

[7]  On January 26, 2024, the Court docketed Plaintiff's Amended Complaint (Doc. 12) and service documents were issued on January 31, 2024.

not receive "the same care as women or men" in Vermont DOC custody; his mail was censored; he received inadequate care during the COVID-19 pandemic; he was issued a "fictional name," apparently a reference to how his name was spelled in corrections records; and he was denied college courses.

Plaintiff claims that Governor Scott has been deliberately indifferent in violation of the Eighth Amendment by sending incarcerated individuals to serve sentences out of state; denying Plaintiff's health needs; and "allowing VTDOC employees to run wild with no accountability," resulting in unspecified retaliatory behavior.

Commissioner Nicholas Deml (*Id.*, ¶¶ 51–63, 127)

Plaintiff alleges that Commissioner Deml "failed to protect" him when he was transferred to serve his sentence out of state. He also appears to allege that women in DOC custody are not subject to out-of-state incarceration. Plaintiff appears to attribute to Commissioner Deml multiple instances of misconduct, including the following: Plaintiff was the victim of sexual assault by a staff member at the out-of-state corrections facility; the sexual assault was not adequately investigated and he did not receive appropriate treatment; when Plaintiff "pressed [the] issue" of the sexual assault, Commissioner Deml "retaliated by using an "inner circle" of corrections staff "as an organized gang to intimidate and harass Plaintiff;" Commissioner Deml "forc[ed]" Plaintiff to participate in sex offender programming without a court order; Commissioner Deml "used his organized gang to confiscate legal papers" and prevent the sending and receiving of mail; Commissioner Deml "continues to address Plaintiff as a fictional entity;" Commissioner Deml refuses Plaintiff copies of electronic grievances and has denied Plaintiff college courses.

Plaintiff claims that Commissioner Deml violated the Eighth Amendment by abusing his power and conspiring "to cover up violations of rights."

DOC Employee Jennifer Sprafke (*Id.*, ¶¶ 64–69, 128)

Plaintiff alleges that Ms. Sprafke "failed to protect" him with respect to the handling of his alleged sexual assault by a corrections staff member at the out-of-state facility. He specifically alleges that Ms. Sprafke failed to provide victim services as required by PREA and failed to involve outside law enforcement in the matter. Plaintiff further alleges that Ms. Sprafke retaliated against him by instituting a "PREA protocol" on Plaintiff and another inmate. He also alleges that Ms. Sprafke used a telephone conversation he had with his mother in connection with the PREA matter.

Plaintiff claims that Ms. Sprafke violated the Eighth Amendment by failing "to do [her] duty" and neglecting her obligations to Plaintiff. He also alleges that Ms. Sprafke "conspired with other defendants" to silence him.

DOC Caseworkers Rick Byrne, Cory Stone, and Dave Turner (*Id.*, ¶¶ 70–76, 129)

Plaintiff alleges that DOC caseworkers Byrne, Stone, and Turner "failed to do their job by sweeping the sexual assault done to Plaintiff under [the] rug." He further alleges that these Defendants did not call outside law enforcement, did not provide appropriate treatment, and "enforced the PREA protocol" against him and another inmate "out of retaliation." These Defendants also allegedly "attempted to pin a death [of an inmate] on Plaintiff." Plaintiff also claims that these Defendants denied Plaintiff privileges such as "bed moves, video visits," and telephone calls with family "free from echos," which apparently refers to Plaintiff's belief that the echos were indicative of corrections staff listening to his phone calls.

Plaintiff claims that these Defendants violated the Eighth Amendment by being deliberately indifferent and failing to do their duty. He also alleges that these Defendants "conspired to cover violations of rights done to Plaintiff."

Attorneys Jill Martin, Emily Tredeau, Joshua O'Hara, and Rubin Jennings (*Id.*, ¶¶ 77–81, 130)

Plaintiff alleges that these attorneys from the Vermont Prisoners' Rights Office refused to report Plaintiff's alleged sexual assault to outside law enforcement; took advantage of Plaintiff's lack of legal knowledge to "sabotage" his case and not pursue civil rights violations; and refused to "push for treatment" or determine why he had not received a response from Ms. Sprafke. Plaintiff also asserts that the attorneys "are aware [the Mississippi corrections facility] attempted to pin an inmate death on Plaintiff."

Plaintiff claims that the Prisoners' Rights Office attorneys "failed to do their duty" as his counsel and conspired "with Defendants to hide violations done to Plaintiff." He alleges that the attorneys "expressed deliberate indifference as well as discrimination and neglect," which he asserts is a violation of the Eighth Amendment.

DOC Employees Mike Lyon, James Elwood, Cathy Grybos, and Timothy Wilke
(*Id.*, ¶¶ 82–88, 131)

Plaintiff alleges that these Defendants subjected him to "unfair treatment," including tampering with legal mail, denying him the privilege of selecting a roommate, placing in the same unit with Plaintiff an inmate who accused him of a PREA violation, failing to inform Plaintiff of a visit from a friend, and "exercising mindwar tactics."[8]

Plaintiff alleges that these Defendants violated the Eighth Amendment by conspiring to treat him differently than others and retaliating against him for using the grievance process.

---

[8] Plaintiff alleges throughout the Amended Complaint that he was subjected to "mindwar tactics." (Doc. 12, ¶¶ 62, 76, 81, 88, 99, 109, 117, 125, 134.) He does not specify any facts elaborating on the term.

DOC Employees Greg Hale, Lisa Madden, and Nicholas Bogovich (*Id.*, ¶¶ 89–99, 132)

Plaintiff alleges that these Defendants treated him differently from others in custody at NWSCF, including by tampering with legal mail, "tearing apart" his cell when he filed a grievance, refusing to allow him to "escalate a grievance or receive [a] physical copy [of the grievance," blocking his phone, taking Plaintiff out of a program "to do a routine shakedown," and confiscating his legal work, books, and pictures of his children.

Plaintiff alleges that these Defendants violated the Eighth Amendment by conspiring to "cover up violations done to Plaintiff," treating him differently from other inmates, and retaliating against him.

DOC Employee Hannah Pfadenhaur (*Id.*, ¶¶ 110–113, 134)

Plaintiff appears to challenge Defendant Pfadenhaur's handling of sex offender programming in the prison facility. The Defendant apparently issued a violation to Plaintiff that resulted in him having to repeat program requirements. Plaintiff contends that Defendant Pfadenhaur "fabricated [the] investigation report to warrant the violation." He asserts that Defendant Pfadenhaur does not have the legal authority to determine who may receive sex offender programming.

Plaintiff alleges that Defendant Pfadenhaur violated the Eighth Amendment by conspiring against Plaintiff to treat him with deliberate indifference, retaliate against him, and fail to provide appropriate treatment.

DOC Employee Dawn Muller (*Id.*, ¶¶ 118–125, 134)

Plaintiff alleges generally that Ms. Muller and others improperly administered the program for sex offenders, including by denying him a copy of his probation conditions and "singling" him out during programming.

Plaintiff alleges that Defendant Muller violated the Eighth Amendment by conspiring against Plaintiff to treat him with deliberate indifference, retaliate against him, and fail to provide appropriate treatment.

<u>DOC Employees Greg Young, Nathan Kirk, and Alyssa Ross (*Id.*, ¶¶ 33–35)</u>

Although Plaintiff names these individuals as Defendants in the caption of the Amended Complaint and in his list of Defendants in the Amended Complaint itself (*id.*), he does not assert any factual allegations or make any legal claims against them.

## **Analysis**

Under 42 U.S.C. § 1983, a plaintiff may assert a civil claim for damages against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." The purpose of § 1983 is "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). To succeed on a § 1983 claim, a plaintiff must establish that: "(1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of h[is] federal statutory rights, or h[is] constitutional rights or privileges." *Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).

Plaintiff generally alleges that Defendants were deliberately indifferent under the Eighth Amendment by failing to protect him in custody, failing to provide appropriate treatment, and

otherwise failing to meet their obligations to him. As the Second Circuit has explained, "[t]o state a claim under the Eighth Amendment on the basis that a defendant has failed to prevent harm, a plaintiff must plead both (a) conditions of confinement that objectively pose an unreasonable risk of serious harm to their current or future health, and (b) that the defendant acted with deliberate indifference." *Tangreti v. Bachmann*, 983 F.3d 609, 618-19 (2d Cir. 2020) (internal quotation marks and citation omitted). Deliberate indifference "means the official must know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 619 (internal quotations marks and citation omitted).

## I.     Standards of Review Under Rules 12(b)(1) and 12(b)(6)

"[B]ecause sovereign immunity is 'jurisdictional in nature,' questions of sovereign immunity implicate a court's subject matter jurisdiction and are analyzed under Rule 12(b)(1)." *Arjent LLC v. SEC*, 7 F. Supp. 3d 378, 383 (S.D.N.Y. 2014) (citing *Hamm v. United States*, 483 F.3d 135, 137 (2d Cir. 2007)). A case is properly dismissed for lack of subject matter jurisdiction "if the court 'lacks the statutory or constitutional power to adjudicate it.'" *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (internal quotation marks omitted).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "provide the grounds upon which [its] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98

(2d Cir. 2007). A plaintiff must also allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This does not require a plaintiff to provide "detailed factual allegations" to support his claims, but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In assessing the adequacy of the pleadings, the court must accept all factual assertions as true and draw all reasonable inferences in favor of the plaintiff. *See Wilson v. Merrill Lynch & Co., Inc.*, 671 F.3d 120, 128 (2d Cir. 2011); *ATSI Commc'ns*, 493 F.3d at 98. The court need not, however, credit the complaint's "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action[ which are] supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678; *see Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) ("We are not . . . bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." (internal quotation marks omitted)).

Even after *Iqbal* and *Twombly*, the court must construe a *pro se* complaint "liberally," *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), reading it "to raise the strongest arguments . . . suggest[ed]," *Bertin*, 478 F.3d at 491 (internal quotation marks omitted). "This policy of liberally construing *pro se* submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect

*pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Triestman*, 470 F.3d at 475 (alteration in original) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). In assessing *pro se* complaints under Rule 12(b)(6), courts "apply[] a more flexible standard to evaluate their sufficiency than [they] would when reviewing a complaint submitted by counsel." *Lerman v. Bd. of Elections in the City of New York*, 232 F.3d 135, 140 (2d Cir. 2000). "This is particularly so when the *pro se* plaintiff alleges that h[is] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Nonetheless, even *pro se* litigants "remain subject to the general standard applicable to all civil complaints under the Supreme Court's decisions in *Twombly* and *Iqbal*." *Brickhouse v. City of New York*, No. 09 CIV. 9353(NRB), 2010 WL 3341845, at *2 (S.D.N.Y. Aug. 16, 2010); *see Bisson v. Martin Luther King Jr. Health Clinic*, No. 07-5416-cv, 2008 WL 4951045, at *1 (2d Cir. Nov. 20, 2008); *Triestman*, 470 F.3d at 477 ("[P]*ro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law." (internal quotation marks omitted)).

## II.    Sovereign immunity bars Plaintiff's claims against the Vermont State Defendants in their official capacities.

"Stated as simply as possible," under the Eleventh Amendment "state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (alteration in original) (internal quotation marks omitted); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984) ("[D]espite the limited terms of the Eleventh Amendment, a federal court [may] not entertain a suit brought by a citizen against his own State."). Therefore, although § 1983 provides a federal forum to remedy

12

deprivations of civil liberties, "it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989).

Eleventh Amendment immunity "extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Gollomp*, 568 F.3d at 366 (internal quotation marks omitted). Thus, where a state official is sued for damages in his or her official capacity, the suit is deemed a suit against the state and is barred by the Eleventh Amendment. *See Will*, 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *see also Pennhurst*, 465 U.S. at 101–03 (holding that Eleventh Amendment bars a suit in federal court against state officials when the state is the real, substantial party in interest); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) (holding that to the extent civil rights action constitutes suit against state official seeking damages for actions taken in his official capacity, such suit is deemed to be against the state, and official is entitled to invoke Eleventh Amendment immunity applicable to the state).

Exceptions to Eleventh Amendment immunity apply when there has been an "unequivocal[]" waiver of immunity by a state, or a similarly clear abrogation of the immunity by Congress. *Pennhurst*, 465 U.S. at 99 ("Our reluctance to infer that a State's immunity from suit in the federal courts has been negated stems from recognition of the vital role of the doctrine of sovereign immunity in our federal system."); *see Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 193 (2d Cir. 2015). The State of Vermont has not waived its Eleventh Amendment immunity. In fact, the Vermont Legislature has specifically preserved the

State's immunity under that Amendment. *See* 12 V.S.A. § 5601(g) (Vermont Tort Claims Act reserves Eleventh Amendment immunity for all claims not specifically waived). It is also well settled that Congress did not abrogate state sovereign immunity by enacting § 1983. *See Quern v. Jordan*, 440 U.S. 332, 340–45 (1979).

Therefore, sovereign immunity bars Plaintiff's claims against the Vermont State Defendants in their official capacities for monetary damages.

Although the Eleventh Amendment bars recovery of monetary damages from state officials in their official capacities, there is a "limited exception to the general principle of sovereign immunity [that] allows 'a suit [for injunctive relief] challenging the constitutionality of a state official's actions in enforcing state law' under the theory that such a suit is not 'one against the State,' and therefore not barred by the Eleventh Amendment." *CSX Transp. v. N.Y. State Off. of Real Prop. Servs.,* 306 F.3d 87, 98 (2d Cir. 2002) (second alteration in original) (quoting *Ex parte Young*, 209 U.S. 123, 154 (1908)). This exception is "narrow: [i]t applies only to prospective relief [and] does not permit judgments against state officers declaring that they violated federal law in the past." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). The Eleventh Amendment bar against official capacity claims thus "depends on the form of relief sought." *Lee v. Dep't of Child. & Fams.*, 939 F. Supp. 2d 160, 165–66 (D. Conn. 2013). "A plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers . . . in their official capacities, provided that [the] complaint (a) 'alleges an ongoing violation of federal law[,]' and (b) 'seeks relief properly characterized as prospective.'" *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)); *see T.W. v. N.Y. State Bd. of L. Exam'rs*, 110 F.4th 71, 94 (2d Cir. 2024) ("[T]he doctrine of *Ex parte Young*

14

permits federal courts to grant injunctions against state officials, but it only permits injunctions to prevent future violations of federal law."); *Lee*, 939 F. Supp. 2d at 166 ("[J]udgments against state officers declaring that they violated federal law in the past are not permitted." (internal quotation marks omitted)).

Plaintiff's request for injunctive relief does not identify any ongoing violations of federal law or specify what specific conduct he seeks to enjoin. (*See* Doc. 12 at 3, ¶ 4.) Rather, the Amended Complaint appears to seek a judgment that the Vermont State Defendants violated federal law through their past actions. Consequently, Plaintiff's request for injunctive relief should be denied.

Accordingly, I recommend that Defendants' Motion to Dismiss be GRANTED with respect to Plaintiff's claims for monetary damages and injunctive relief against Defendants in their official capacities.

## III. The individual-capacity claims should be dismissed because Plaintiff has not plausibly alleged that the Vermont State Defendants were personally involved in the alleged constitutional violations.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (internal quotation marks omitted); *see Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135–36 (2d Cir. 2013) (holding that a plaintiff proceeding under § 1983 must allege facts showing defendants' direct and personal involvement in alleged constitutional deprivation); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).

### A. Claims Against Governor Scott

Plaintiff alleges that Governor Scott violated the Eighth Amendment when Plaintiff was transferred to TCCF to serve his prison sentence. As summarized more fully above, he alleges a

15

series of alleged violations while incarcerated in Mississippi, including sexual assault, unequal treatment and denial of educational opportunities, censoring of his mail, and inadequate medical care during the COVID-19 pandemic. Apparently as a result of these alleged violations, Plaintiff alleges that the transfer to TCCF amounted to a failure to protect him in violation of the Eighth Amendment.

Plaintiff's claims against Governor Scott should be dismissed because he has not plausibly alleged the Governor's personal involvement in the alleged Eighth Amendment violation. With respect to transfer of individuals serving prison sentences to out-of-state facilities, the State correctly notes that Vermont law vests this responsibility with the Commissioner of the Vermont Department of Corrections. 28 V.S.A. § 102(b)(5) (charging the Commissioner with the power "[t]o order the assignment and transfer of persons committed to the custody of the Commissioner to correctional facilities, including out-of-state facilities"). Therefore, it is simply not plausible to claim that the Governor was personally aware of a "substantial risk of serious harm" to Plaintiff and deliberately took no action. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (explaining that deliberate indifference occurs when an official "knows that [an] inmate[] face[s] a substantial risk of serious harm and disregards the risk by failing to take reasonable measures to abate it").

### B.    Claims Against Commissioner Deml

Plaintiff alleges that Commissioner Deml violated Plaintiff's Eighth Amendment rights by "abusing his power" and conspiring "to cover up violations of rights." (Doc. 12 at 17, ¶ 127.) As summarized more fully above, Plaintiff alleges that Commissioner Deml "failed to protect" him by transferring him to an out-of-state facility where he was allegedly sexually assaulted,

received inadequate treatment, was retaliated against, and forced to participate in sex offender programming.

Plaintiff's claims against Commissioner Deml should be dismissed because he has not plausibly alleged the Commissioner's personal involvement in the alleged Eighth Amendment violations. With respect to transfer of individuals serving prison sentences to out-of-state facilities, this Court has previously held that "the Commissioner is not personally involved in all transfer decisions simply by virtue of his office." *Martin v. Pallito*, No. 1:13-cv-70-JGM, 2013 WL 6528512, at *4 (D. Vt. Dec. 10, 2013); *see also id.* (noting that while the Commissioner is authorized to designate the place of confinement for service of a sentence, "the Commissioner is also authorized to delegate 'any authority conferred on him by statute to any designee named by him in writing'") (quoting 28 V.S.A. § 102(b)(4)). Therefore, to the extent that Plaintiff alleges that his transfer to TCCF was an Eighth Amendment violation, Plaintiff has not plausibly alleged that the Commissioner was personally involved in the transfer decision.

With respect to the misconduct Plaintiff alleges occurred during his incarceration, Plaintiff makes no allegations demonstrating that the Commissioner was personally involved in the alleged misconduct. Furthermore, Plaintiff has not alleged any facts raising an inference that the Commissioner was personally aware of any of the harms Plaintiff alleged in the Amended Complaint.

To the extent the Complaint alleges that the Commissioner is liable to Plaintiff under a theory of supervisor liability, i.e., pursuant to his role as the Commissioner responsible for the operation of DOC, these allegations are legally insufficient. Supervisor liability in a § 1983 action cannot rest merely on a theory of respondeat superior. *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003); *see Tangreti*, 983 F.3d at 617 ("[A] conception of supervisory liability—

17

according to which a supervisor may be held liable based on a lesser showing of culpability than the constitutional violation requires—is inconsistent with the principle that officials may not be held accountable for the misdeeds of their agents." (internal quotation marks omitted)). Mere "linkage in the prison chain of command" is insufficient to implicate a state commissioner of corrections in a § 1983 claim. *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985); *see also Wright*, 21 F.3d at 501 (noting that a defendant in a § 1983 action may not be held liable for constitutional violations merely because he held a high position of authority). In other words, "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution . . . .[t]he violation must be established against the supervisory official directly. *Tangreti*, 983 F.3d at 618 (citations and internal quotation marks omitted).[9]

Plaintiff's Amended Complaint does not allege sufficient personal involvement of Commissioner Deml. Nor does it allege that the Commissioner was subjectively aware of any serious risk to Plaintiff and disregarded it. I therefore recommend that the Motion to Dismiss be GRANTED with respect to Plaintiff's claims against Commissioner Deml in his individual capacity.

## C.    Claims Against Jennifer Sprafke

Plaintiff alleges that Ms. Sprafke, identified as "PREA (Vermont)," violated his Eighth Amendment rights by failing "to do [her] duty" regarding the handling of his alleged sexual assault by a corrections staff member. He appears to allege that Ms. Sprafke did not adequately

---

[9] The Amended Complaint is not clear whether the alleged misconduct Plaintiff attributes to Commissioner Deml occurred at TCCF or DOC facilities in Vermont, or both. Nevertheless, Plaintiff does not sufficiently allege the Commissioner's personal involvement in the claimed Eighth Amendment violations. To the extent that Plaintiff seeks to impose liability for alleged misconduct at TCCF, the Commissioner's personal involvement in any alleged misconduct in the Mississippi facility is even less plausible given that the Commissioner generally lacks authority over TCCF. *See* 28 V.S.A. § 101(1) (empowering the Commissioner to administer "State correctional facilities").

implement PREA protocols, such as involving outside law enforcement and providing victim services. He alleges that Ms. Sprafke retaliated against him and conspired "with other defendants" to silence him.

According to Plaintiff, Ms. Sprafke's allegedly unconstitutional conduct in carrying out her PREA duties occurred in relation to Plaintiff's sexual assault by a staff member at TCCF in Mississippi. (Doc. 12 at 8, ¶ 41.) Plaintiff does not explain how Ms. Sprafke, a person he identifies as a Vermont DOC official with PREA responsibilities, had any personal involvement with the alleged incident in Mississippi.[10] To the extent that Plaintiff is claiming that Ms. Sprafke's apparent oversight of PREA procedures in Vermont DOC facilities renders her liable for the alleged incident at TCCF, a defendant may not be held liable for constitutional violations simply by virtue of her supervisory role, particularly where the alleged misconduct occurred in a facility outside of Vermont. *See Tangreti*, 983 F.3d at 617.

**D.    The claims against the remaining Vermont State Defendants should be dismissed because they do not sufficiently link the multiple instances of allegedly unconstitutional conduct to specific Defendants.**

Under the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "Although [Rule] 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order). A plaintiff does not satisfy this minimum standard "[b]y lumping all the defendants together in each claim and providing no factual basis to

---

[10]    As the Vermont State Defendants note, federal regulations require agency-wide PREA coordinators to implement and oversee PREA procedures in their own correctional facilities. *See* 28 C.F.R. § 115.11(b).

distinguish their conduct." *Id*. Such "group pleading" is inconsistent with the purposes of Rule 8. *See Han v. InterExchange, Inc.*, Case No. 1:23-cv-07786, 2024 WL 3990770, at *11 (S.D.N.Y. Aug. 28, 2024); *Wright v. Orleans County*, 2015 WL 5316410, at *13 (W.D.N.Y. Sept. 10, 2015) (noting in § 1983 context that "[g]roup pleading is insufficient for purposes of [Rule 8(a)(2)] which requires a short and plain statement of the claim showing that the pleader is entitled to relief"). "[B]ecause the personal involvement of a defendant is a prerequisite to an award of damages under § 1983, a plaintiff cannot rely on a group pleading against all defendants without making specific individual factual allegations." *Stevenson v. New York Dep't of Corrections and Community Supervision*, No. 1:21-cv-355, 2022 WL 179768, at *10 (W.D.N.Y. Jan. 20, 2022) (Crawford, J.)

Nevertheless, a court is to consider notice pleading requirements in context and may deny a motion to dismiss for improper "group pleading" if, considered as a whole, "the complaint furnishes adequate notice for initial pleading purposes of plaintiff's claim of wrongdoing." *Bruce Kirby, Inc. v. Quarter Moon, Inc.*, No. 17-CV-1389, 2018 WL 3614120, at *2 (D. Conn. July 27, 2018).

In this case, Plaintiff's Amended Complaint should be dismissed because it relies on "group pleading" that does not adequately allege what each individual Defendant did to violate his Eighth Amendment rights. For example, Plaintiff generally alleges that caseworkers Rick Byrne, Corey Stone, and Dave Turner "failed to do their job by sweeping the sexual assault done to Plaintiff under the rug." (Doc. 12 at 11, ¶ 70.) The remaining allegations vaguely claim that "Defendants" "refused . . . to give appropriate treatment," and that "Defendants kept Plaintiff in that situation." (*Id.*, ¶ 72.) Plaintiff further alleges that "Defendants enforced this PREA protocol on . . . Plaintiff out of retaliation" without specifying the details of the PREA protocol or the

alleged retaliation. As noted, Plaintiff also alleges that Defendants "exercise[ed] mindwar tactics" without identifying what Defendants allegedly did in this regard.

Similarly, Plaintiff alleges that Prisoners' Rights Office Attorneys Martin, O'Hara, Tredeau, and Jennings "took advantage of" his lack of legal knowledge to "sabotage" his case and not pursue civil rights violations. (*Id.* at 11, ¶ 77.) However, Plaintiff does not include any details of the alleged sabotage and what each of the attorneys allegedly did to sabotage his case. He also alleges that "Defendants are aware TCCF attempted to pin an inmate death on Plaintiff," but he does not elaborate how this alleged awareness, or any of the other alleged misconduct, resulted in an Eighth Amendment violation.[11]

With respect to DOC employees Lyon, Elwood, Grybos, and Wilke, Plaintiff alleges generally that each of these Defendants subjected him to "unfair treatment." (*Id.* at 12, ¶ 82.) The remaining allegations as to these Defendants (tampering with legal mail, not permitting him to select a roommate, placement in unit with another inmate who made a PREA complaint against Plaintiff) do not differentiate among the four Defendants. This is particularly problematic because one of the named Defendants is a DOC Superintendent and the other a supervisor, both of whom may not be liable under § 1983 absent their personal involvement in the allegedly unconstitutional conduct.

As to Defendants Hale, Madden, and Bogovich, Plaintiff alleges that these Defendants have treated him unequally. (*Id.* at 13, ¶ 89.) However, the remaining allegations assert that "Defendants" tamper with his legal mail; "tore apart" his cell after he filed a grievance, blocked

---

[11] The State further argues that the claims against the PRO attorneys fail because they cannot be deemed to have acted "under color of state law" as required to state a § 1983 claim. (Doc. 63 at 16 n.2 and 24–26 (citing case law holding that, despite their status as state employees, public defenders do not act under color of state law while serving as defense counsel).) They further contend that the PRO attorneys cannot be deemed "state actors" because they were providing legal services in proceedings where Plaintiff was "adverse to the State." (*Id.* at 24.) As Plaintiff has not alleged plausible claims against these Defendants, the Court does not address Defendants' legal argument at this time.

his phone, refused to provide grievance materials, "read program material," confiscated his legal

work, confiscated books, and "exercise[ed] mindwar tactics." (*Id*., ¶¶ 90–99.) These allegations

do not adequately allege who of the named Defendants is responsible for these actions. This is

again problematic because one of the named Defendants is a Superintendent and another is an

Assistant Superintendent of NWSCF, both of whom may not be liable under § 1983 absent their

personal involvement in the allegedly unconstitutional conduct.

Plaintiff's allegations as to Defendant Pfadenhaur are more detailed. He alleges that she

did "not follow protocol" in the administration of sex offender programming; that she "fabricated

an investigation report" resulting in Plaintiff receiving a violation; that she exercises authority

over which inmates receive sex offender programming, but only the courts may make such

determinations; that she denied Plaintiff a copy of his court conditions; that she "forced" him to

undergo sex offender programming; and that she "exercise[ed] mindwar tactics." (*Id*. at 15,

¶¶ 110–117.) Even assuming the truth of these allegations, however, the allegations are not

related to the claims he collectively pleads against Ms. Pfadenhaur and the six other Defendants

(*Id.* at 19, ¶ 134 (alleging deliberate indifference, failure to provide appropriate treatment,

neglect, "blatant ill will," and "retaliatory behavior (mindwar tactics)").)

### E.    Plaintiff's conclusory claims of § 1983 conspiracy should be dismissed because they do not state the elements of the claim.

In his claims for relief, Plaintiff generally alleges that the Vermont State Defendants have

conspired with each other and others to "cover up violations of rights," to treat him differently

from others, and to be deliberately indifferent towards him. (*Id*. at 17, ¶ 127; *id.* at 18, ¶¶ 129–

132; *id.* at 19, ¶ 134.)

To state a conspiracy claim under § 1983, a plaintiff must allege "(1) an agreement

between two or more state actors . . . (2) to act in concert to inflict an unconstitutional injury; and

(3) an overt act done in furtherance of that goal causing damages." *McDaniel v. City of New York*, 585 F. Supp. 3d 503, 521 (S.D.N.Y. 2022) (internal quotation marks and citation omitted). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002).

The conclusory allegations in the Amended Complaint are insufficient to state a conspiracy claim under § 1983. As explained above, Plaintiff asserts a series of Eighth Amendment claims against the Vermont State Defendants sorted into groups by role in the DOC or the Prisoners' Rights Office. Within each of these groups, however, Plaintiff does not specifically allege what each of these individuals did to cause the claimed Eighth Amendment violation. In his "Claims for Relief," Plaintiff alleges that the individuals in each of these groups "conspired" to violate his Eighth Amendment rights. These allegations, however, contain no facts to suggest an agreement to act in concert to inflict an unconstitutional injury. *McDaniel*, 585 F. Supp. 3d at 521. These conclusory allegations are insufficient to allege a § 1983 conspiracy against the various Vermont State Defendants.

IV. **Given the recommendation that the Amended Complaint be dismissed with leave to amend, it is unnecessary to address the Vermont State Defendants' qualified immunity argument.**

The Vermont State Defendants argue that they are entitled to qualified immunity from Plaintiff's claims "given the absence of any violation of a constitutional right or federal law." (Doc. 63 at 18.)

Qualified immunity is an affirmative defense that shields public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The qualified immunity analysis consists of two inquiries. First, the plaintiff must plausibly allege that the public official's conduct violated a constitutional right. *Salahuddin*, 467 F.3d at 273. Second, the court must ascertain whether the right was clearly established and, if so, whether the defendant's actions were objectively unreasonable in light of this clearly established precedent. *Id.*; *see also In re State Police Litig.*, 88 F.3d 111, 123 (2d Cir. 1996) ("A right whose existence is indicated by prior case law with reasonable specificity is clearly defined within the meaning of this doctrine." (internal quotation marks omitted)).

The inquiry "is often fact-intensive, and if facts are in dispute, a court may need to have a jury resolve them before it can decide whether qualified immunity bars a plaintiff's claim or, at least, it may require a full record on a motion for summary judgment to determine if there is a factual issue." *Birch v. City of New York*, 184 F. Supp. 3d 21, 28 (E.D.N.Y. 2016) (citation omitted); *see also Armstrong v. State of Conn. Dep't of Children & Families Juvenile Training School*, No. 3:04CV360(WWE), 2004 WL 1151592, at *2 (D. Conn. May 12, 2004) (qualified immunity more appropriately raised at summary judgment). "Not only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (citation omitted) (quoting *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992)).

As this Report and Recommendation recommends dismissal of the Amended Complaint with leave to amend, I do not address qualified immunity at this time. *See, e.g.*, *Gunn v. Malani*,

No. 20-CV-2681 (KMK), 2021 WL 5507057, at *8 (S.D.N.Y. Nov. 23, 2021) (granting motion

to dismiss with leave to amend and holding that "it is inappropriate [to] rule on the issue of

qualified immunity" until the court was presented with a more developed factual record); *Guinn*

*v. Kaplan*, 16.CV-03185 (NSR), 2018 WL 4333991, at *6 (S.D.N.Y. Sept. 10, 2018) (granting

motion to dismiss with leave to amend, and finding it "unnecessary to address Defendants' claim

of qualified immunity since the complaint fails to assert a plausible claim").

V.    **Plaintiff's "Vortical Motion to Terminate the Defendants 360°" is an unauthorized surreply to State of Vermont Defendants' Motion to Dismiss and should not be considered.**

Although styled as a motion, Plaintiff states in the "Vortical Motion" that the filing is

intended to address the arguments asserted in the State of Vermont Defendants' Motion to

Dismiss. (*See* Doc. 69 at 2.) However, Plaintiff has already filed a memorandum in opposition to

the Vermont State Defendants' Motion to Dismiss. (Doc. 64.) After review of the "Vortical

Motion" in its entirety, the Court interprets the filing to be a memorandum in response to the

Motion to Dismiss. The State of Vermont Defendants' Response notes that this Court's Local

Rules do not make provision for surreplies. (Doc. 70 at 1.)

Local Rules of Civil Procedure 7(a)(3) and (5) authorize the filing of a "memorandum in

opposition" in response to a dispositive motion, and a "reply memorandum" in response to the

memorandum in opposition. The Rules do not provide for the filing of a surreply in response to a

reply memorandum. The court may in its discretion permit a party to file a surreply if the party

requests leave to do so. Plaintiff has not filed a motion requesting leave to file a surreply. Even if

he had done so, a motion seeking leave to file a surreply will be granted only in extraordinary

circumstances, such as when it is necessary to permit the filing party to address an issue raised

for the first time in the moving party's reply. *See, e.g.*, *Chaney v. Stewart*, Civil Action No.

2:13–cv–246, 2015 WL 1538021, at *1 (D. Vt. Apr. 7, 2015) ("The Local Rules do not provide for the filing of a surreply, and [plaintiff] has neither requested leave of court nor presented extraordinary circumstances justifying the filing in this case."); *Preston Hollow Cap. LLC v. Nuveen Asset Mgmt. LLC*, 343 F.R.D. 460, 466 (S.D.N.Y. 2023) ("[W]here a party requesting to submit a sur-reply was on notice of the opposing party's argument or the party had ample opportunity to address the argument, courts have denied leave to file a sur-reply." (internal quotation marks omitted)).

As this case does not appear to present such extraordinary circumstances, there are no grounds for the Court to consider Plaintiff's unauthorized surreply. *See Kapiti v. Kelly*, No. 07 Civ. 3782(RMB)(KNF), 2008 WL 754686, at *1 n.1 (S.D.N.Y. Mar. 12, 2008) ("[T]he decision to permit a litigant to submit a surreply is a matter left to the Court's discretion, since neither the Federal Rules of Civil Procedure nor the Local Civil Rules of this court authorize litigants to file surreplies. Allowing parties to submit surreplies is not a regular practice that courts follow, because such a procedure has the potential for placing a court in the position of refereeing an endless volley of briefs." (internal quotation marks omitted)), *report and recommendation adopted*, 2008 WL 1882652 (Apr. 28, 2008). The general restriction against surreplies applies to self-represented parties. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (holding that "*pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law" (internal quotation marks omitted)).

Although pro se plaintiffs are afforded liberal interpretations of their pleadings, they nevertheless must comply with procedural rules regarding the filing of surreplies. Therefore, I recommend that Plaintiff's "Vortical Motion to Terminate the Defendants 360°" be denied as an unauthorized surreply.

## VI.    Motion for Appointment of Counsel

Plaintiff requests that the Court appoint counsel to assist him in presenting a Complaint that meets the required legal standards. (Doc. 65.) This is Plaintiff's second request for appointment of counsel.

"A party has no constitutionally guaranteed right to the assistance of counsel in a civil case." *Leftridge v. Conn. State Trooper Officer # 1283*, 640 F.3d 62, 68 (2d Cir. 2011); *see also United States v. Coven*, 662 F.2d 162, 176 (2d Cir. 1981). Nevertheless, a party granted *in forma pauperis* status may request that the Court appoint counsel if he is unable to afford the cost of an attorney. *See* 28 U.S.C. § 1915(e)(1). The court is granted "[b]road discretion" in making this decision. *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986).

In considering appointment of counsel, the court must "look first to the 'likelihood of merit' of the underlying dispute" to determine whether the claim is likely one of substance. *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (quoting *Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997)). If the court finds that the claim is likely of substance, it should then consider the following factors:

> [T]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues[,] and any special reason in th[e] case why appointment of counsel would be more likely to lead to a just determination.

*Hodge*, 802 F.2d at 61–62.

Based on the facts alleged in the Amended Complaint, it is not clear whether Plaintiff's claims are likely of substance. The Court's recommendation that the Amended Complaint be dismissed suggests that Plaintiff's claims are not of substance presently. *See Harris v. Binghamton Police Dep't*, 3:22-CV-0977 (BKS/ML), 2023 WL 417897, at *9–10 (N.D.N.Y.

Jan. 26, 2023) (reasoning that plaintiff's claims were not likely to be of substance based on the court's recommendation that the claims be dismissed), *report and recommendation adopted*, 2023 WL 2662282 (N.D.N.Y. Mar. 28, 2023); *Robinson v. Williams*, 6:22-CV-0982 (GTS/ML), 2023 WL 3352758, at *13 (N.D.N.Y. Jan. 12, 2023) ("In the present matter, the [c]ourt has recommended dismissal of the action. As such, the [c]ourt cannot find that [p]laintiff's claims are likely to be of substance.").

Therefore, I recommend that Plaintiff's Motion to Assign Counsel (Doc. 65) be DENIED without prejudice.

## VII.  Leave to Amend

The Second Circuit has emphasized that a district court should not dismiss a *pro se* filing "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks omitted); *see Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013) ("[A] *pro se* complaint generally should not be dismissed without granting the plaintiff leave to amend at least once[.]"). "[E]ven after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008).

Although Plaintiff has already amended his Complaint once, the amendment occurred at the inception of his case and well before the Motion to Dismiss was filed and this Report and Recommendation issued. Consequently, he did not have the benefit of judicial review of his initial allegations and guidance on the deficiencies of his asserted claims.

Therefore, given Plaintiff's *pro se* status, I recommend that Plaintiff be granted leave to file a second amended complaint. If Plaintiff chooses to submit a second amended complaint, it

shall be titled "Second Amended Complaint" and shall contain all claims against all parties with all related factual allegations, as it will supersede the existing Amended Complaint in all respects.

### Conclusion

For these reasons, I recommend that the Vermont State Defendants' Motion to Dismiss (Doc. 63) be GRANTED. I further recommend that Plaintiff's request for appointed counsel (Doc. 65) be DENIED without prejudice, and Plaintiff's "Vortical Motion to Terminate the Defendants 360°" (Doc. 69) be DENIED as an unauthorized surreply. Finally, I recommend that Plaintiff be granted leave to file a second amended complaint.

Dated at Burlington, in the District of Vermont, this 28th day of February 2025.


*/s/ Kevin J. Doyle*
United States Magistrate Judge


Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections that shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (quoting *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d Cir. 1989)).