UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| King Kaseen, | |
|     Plaintiff, | |
|     v. | Civil Action No. 2:23-cv-416 |
| Nicholas Deml, | |
|     Defendant. | |

## REPORT AND RECOMMENDATION
(Docs. 81, 83)

Plaintiff King Kaseen, proceeding *pro se*, brings this action under 42 U.S.C. § 1983 against former Vermont Department of Corrections (DOC) Commissioner Nicholas Deml, alleging that his DOC-ordered participation in sex offender treatment while incarcerated and in the community after release, as well as his sex offender-related conditions of supervision, constituted cruel and unusual punishment in violation of the Eighth Amendment because he was never convicted of a sex offense. Plaintiff seeks $6.27 million in compensatory damages for the alleged Eighth Amendment violations. As discussed in more detail below, Plaintiff also appears to request injunctive relief.

Plaintiff initially brought this § 1983 action against thirty Defendants in their individual and official capacities, seeking monetary damages and injunctive relief for the alleged violation of his Eighth Amendment rights. (Docs. 7, 12.) The undersigned issued a Report and Recommendation (R&R) recommending that Defendants' Motion to Dismiss be granted and that Plaintiff be granted leave to file a second amended complaint. (Doc. 75.) The R&R was adopted in full. (Doc. 78.)

Plaintiff subsequently filed a Motion for Leave to File an Amended Complaint (Doc. 81), which the Court construes as Plaintiff's Second Amended Complaint. In the Second Amended Complaint, Plaintiff names former DOC Commissioner Deml[1] in his individual and official capacities.

Former Commissioner Deml has filed a Motion to Dismiss Plaintiff's Second Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the following grounds: (1) sovereign immunity bars Plaintiff's official-capacity claims for damages against Defendant; and (2) the individual-capacity claims are legally insufficient because Plaintiff has not plausibly alleged that Defendant was personally involved in the alleged constitutional violations. (Doc. 83.)

For the reasons set forth below, I recommend that Defendant's Motion to Dismiss (Doc. 83) be GRANTED. If the Court adopts this Report and Recommendation, I further recommend that the Court deny Plaintiff leave to amend the Second Amended Complaint.

## Procedural History and Factual Background

On November 27, 2023, the Court granted Plaintiff's Motion for Leave to Proceed *in forma pauperis* (IFP) (Doc. 5), and docketed the Complaint (Doc. 7). On the same date, the Court granted Plaintiff's Motion for Leave to File an Amended Complaint. (Doc. 8.) On December 19, 2023, Plaintiff filed a Motion for Leave to File an Amended Complaint (Doc. 10), which the Court construed as his Amended Complaint and ordered that the Amended Complaint be served on Defendants. (ECF 11.)

---

[1] Defendant Deml resigned as DOC Commissioner effective August 15, 2025. *See Press Release of the Office of Governor Phil Scott*, Governor Phil Scott Announces Departure of Corrections Commissioner Nick Deml, Appoints Jon Murad as Interim Corrections Commissioner | Department of Corrections (issued July 28, 2025).

The twenty-page Amended Complaint contained numerous allegations of allegedly unconstitutional conduct against Commissioner Deml, among other Defendants. Plaintiff alleged that Defendant Deml "modified a court order by forcing plaintiff to take a sex offender program." (Doc. 12 at 9, ¶ 57.) The Court dismissed the individual-capacity claims against Defendant Deml because Plaintiff had not plausibly alleged Defendant Deml's personal involvement in the alleged unconstitutional conduct. (Doc. 75 at 17–18.) The Court also dismissed the official-capacity claims against Defendant Deml as barred by Eleventh Amendment sovereign immunity. (*Id.* at 12–15.) The Court granted Plaintiff leave to file a second amended complaint. (Doc. 78.)

In the Second Amended Complaint, Plaintiff essentially alleges that he was ordered to participate in a sex offender treatment program and "abide by a list of stereotypical sex offender conditions," even though he was not convicted of a sex offense. (Doc. 81 at 3.) Specifically, Plaintiff asserts that Defendant Deml modified a court order and "used negligence[] and defamation towards plaintiff instead of authorized treatment." (*Id.* at 6.) Plaintiff appears to claim that DOC inflicted cruel and unusual punishment in violation of the Eighth Amendment by allegedly forcing him to participate in unnecessary sex offender treatment. (*Id.* at 2–3.)

Plaintiff also alleges that Defendant Deml "continues knowingly to brand plaintiff as a sex offender; even attach[ing] a[n] ankle monitor on plaintiff's leg as other sex offenders, in violation of the due process clause of the Federal and State Constitution." (*Id.* at 4.)

Although not entirely clear, Plaintiff may also be seeking injunctive relief regarding his "sex offender conditions" and the requirement that he participate in a sex offender treatment program. (*Id.* at 3.) Plaintiff states that because one of the conditions of supervision requires him to inform others of his criminal history and conditions of supervision, the "public is on alert" that

3

he is a sex offender, and as a result he faces stigma, ostracization, and difficulty reintegrating into the community. (*Id.* at 3–5.) He asserts that his sex offender status has placed him "in harm's way" and that he has been "beaten up twice." (*Id.* at 4–5, 8.) Plaintiff further asserts that his forced participation in the sex offender treatment program has triggered his "childhood trauma," causing mental and physical suffering. (*Id.* at 5.) Plaintiff requests a public and written apology, and the Court's assistance in "making it LAW that these actions will never be rendered again to anyone" in Vermont. (*Id.* at 9.)

## Standards of Review

A case should be dismissed under Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (internal quotation marks omitted).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "provide the grounds upon which [its] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). A plaintiff must also allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In examining the facial plausibility of a claim under Rule 12(b)(6), "the Court may consider documents attached as an exhibit [to the complaint] or incorporated by reference, documents that are 'integral' to plaintiff's claims, even if not explicitly incorporated by reference, and matters of which judicial notice may be taken." *Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) (citations omitted); *see also Chambers v. Time Warner, Inc.*,

4

282 F.3d 147, 152–53 (2d Cir. 2002). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This does not require a plaintiff to provide "detailed factual allegations" to support his claims, but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In assessing the adequacy of the pleadings, the court must accept all factual assertions as true and draw all reasonable inferences in favor of the plaintiff. *See Wilson v. Merrill Lynch & Co., Inc.*, 671 F.3d 120, 128 (2d Cir. 2011); *ATSI Commc'ns, Inc.*, 493 F.3d at 98. The court need not, however, credit the complaint's "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678; *see Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) ("We are not . . . bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." (internal quotation marks omitted)).

Even after *Iqbal* and *Twombly*, the court must construe a *pro se* complaint "liberally," *Harris*, 572 F.3d at 72, reading it "to raise the strongest arguments . . . suggest[ed]," *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks omitted). "This policy of liberally construing *pro se* submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of

5

their lack of legal training.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (alteration in original) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). When assessing *pro se* complaints under Rule 12(b)(6), courts "apply[] a more flexible standard to evaluate their sufficiency than [they] would when reviewing a complaint submitted by counsel." *Lerman v. Bd. of Elections in the City of New York*, 232 F.3d 135, 140 (2d Cir. 2000). "This is particularly so when the *pro se* plaintiff alleges that h[is] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Nonetheless, even *pro se* litigants "remain subject to the general standard applicable to all civil complaints under the Supreme Court's decisions in *Twombly* and *Iqbal*." *Brickhouse v. City of New York*, No. 09 CIV. 9353(NRB), 2010 WL 3341845, at *2 (S.D.N.Y. Aug. 16, 2010); *see Bisson v. Martin Luther King Jr. Health Clinic*, No. 07-5416-cv, 2008 WL 4951045, at *1 (2d Cir. Nov. 20, 2008); *Triestman*, 470 F.3d at 477 ("[P]*ro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law." (internal quotation marks omitted)).

## Analysis

Under 42 U.S.C. § 1983, a plaintiff may assert a civil claim for damages against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." The purpose of § 1983 is "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). To succeed on a § 1983 claim, a

plaintiff must establish that: "(1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of h[is] federal statutory rights, or h[is] constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).

As explained below, Plaintiff's claims against Defendant Deml should again be dismissed.

I.  **Sovereign immunity bars Plaintiff's official-capacity claims against Defendant Deml for monetary damages.**

Under the Eleventh Amendment, "state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (alteration in original) (internal quotation marks omitted); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984) ("[D]espite the limited terms of the Eleventh Amendment, a federal court [may] not entertain a suit brought by a citizen against his own State."). Therefore, although § 1983 provides a federal forum to remedy deprivations of civil liberties, "it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989).

Eleventh Amendment immunity "extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Gollomp*, 568 F.3d at 366 (internal quotation marks omitted). Thus, where a state official is sued for damages in his or her official capacity, the suit is deemed a suit against the state and is barred by the Eleventh Amendment. *See Will*, 491 U.S. at 71 ("[A] suit against a state official in his or her official

capacity is not a suit against the official but rather is a suit against the official's office."); *see also Pennhurst*, 465 U.S. at 101–03 (holding that the Eleventh Amendment bars a suit in federal court against state officials when the state is the real, substantial party in interest); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) (holding that to the extent civil rights action constitutes suit against state official seeking damages for actions taken in his official capacity, such suit is deemed to be against the state, and official is entitled to invoke Eleventh Amendment immunity applicable to the state).

Exceptions to Eleventh Amendment immunity apply when there has been an "unequivocal[]" waiver of immunity by a state, or a similarly clear abrogation of the immunity by Congress. *See Pennhurst*, 465 U.S. at 99 ("Our reluctance to infer that a State's immunity from suit in the federal courts has been negated stems from recognition of the vital role of the doctrine of sovereign immunity in our federal system."); *see also Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 193 (2d Cir. 2015). The State of Vermont has not waived its Eleventh Amendment immunity. In fact, the Vermont Legislature has specifically preserved the State's immunity under that Amendment. *See* 12 V.S.A. § 5601(g) (Vermont Tort Claims Act reserves Eleventh Amendment immunity for all claims not specifically waived). It is also well settled that Congress did not abrogate state sovereign immunity by enacting § 1983. *See Quern v. Jordan*, 440 U.S. 332, 340–45 (1979).

Therefore, sovereign immunity bars Plaintiff's claims against Defendant Deml in his official capacity for monetary damages.

## II. Plaintiff's request for injunctive relief should be denied because he has not identified ongoing violations of federal law or specified the conduct he seeks to enjoin.

Although the Eleventh Amendment bars recovery of monetary damages from state

officials in their official capacities, there is a "limited exception to the general principle of sovereign immunity [that] allows 'a suit [for injunctive relief] challenging the constitutionality of a state official's actions in enforcing state law' under the theory that such a suit is not 'one against the State,' and therefore not barred by the Eleventh Amendment." *CSX Transp. v. N.Y. State Off. of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002) (second alteration in original) (quoting *Ex parte Young*, 209 U.S. 123, 154 (1908)). This exception is "narrow: [i]t applies only to prospective relief [and] does not permit judgments against state officers declaring that they violated federal law in the past." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). The Eleventh Amendment bar against official-capacity claims thus "depends on the form of relief sought." *Lee v. Dep't of Child. & Fams.*, 939 F. Supp. 2d 160, 165–66 (D. Conn. 2013). "A plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers . . . in their official capacities, provided that [the] complaint (a) 'alleges an ongoing violation of federal law[,]' and (b) 'seeks relief properly characterized as prospective.'" *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)); *see also T.W. v. N.Y. State Bd. of L. Exam'rs*, 110 F.4th 71, 94 (2d Cir. 2024) ("[T]he doctrine of *Ex parte Young* permits federal courts to grant injunctions against state officials, but it only permits injunctions to prevent future violations of federal law."); *Lee*, 939 F. Supp. 2d at 166 ("[J]udgments against state officers declaring that they violated federal law in the past are not permitted." (internal quotation marks omitted)).

      Plaintiff's request for injunctive relief does not identify any ongoing violations of federal law or specify the conduct he seeks to enjoin. (*See* Doc. 81 at 2, 8–9.) Construing Plaintiff's Second Amended Complaint liberally, it appears that Plaintiff may be seeking to enjoin

9

Defendant Deml from requiring Plaintiff to participate in a sex offender treatment program and to continue to comply with the challenged conditions of supervision. (*See id.* at 2–6.) To the extent that Plaintiff seeks to enjoin such conduct, injunctive relief is not available because Plaintiff does not identify any ongoing violations of federal law. To the contrary, it appears that the conduct Plaintiff seeks to enjoin has concluded. Plaintiff attaches to his Second Amended Complaint a stipulation to resolve a Motion for Preliminary Injunction filed in Vermont Superior Court in which Commissioner Deml agreed to strike Plaintiff's sexual risk-related conditions of supervision and the sex offender treatment requirement. (*See* Doc. 81-3, Exh. C (striking the conditions); Doc. 81-1, Exh. A (listing the challenged conditions).)[2] Injunctive relief is unavailable when a defendant has ceased the allegedly wrongful activity sought to be enjoined. *Burndy Corp. v. Teledyne Indus., Inc.*, 748 F.2d 767, 774 (2d Cir. 1984). Thus, given the stipulation striking the challenged conditions,[3] and considering that Plaintiff is no longer in DOC custody, injunctive relief should be denied.

Accordingly, I recommend that Defendant's Motion to Dismiss be GRANTED with respect to Plaintiff's claims for monetary damages and injunctive relief against Defendant in his official capacity.

---

[2] Defendant further argues that even without the stipulation, this Court may not consider an inmate's challenge to the DOC's sex offender programming decisions. (Doc. 83 at 4.) The Court does not expressly address this legal argument in this Report and Recommendation, but notes that this Court has previously determined that an inmate may not "challenge the DOC's sex offender programming decisions" because they are discretionary decisions of the DOC not subject to judicial review. *See Rheaume v. Pallito*, No. 2:15-cv-135-wks-jmc, 2016 WL 3277318, at *5 (D. Vt. Apr. 20, 2016), *report and recommendation adopted*, No. 2:15-cv-135, 2016 WL 3344223 (D. Vt. June 14, 2016).

[3] Referencing the January 6, 2025 stipulation striking the sex offender conditions (attached to Plaintiff's Second Amended Complaint as Exhibits A and C), the former Commissioner confirms that DOC in fact agreed to strike the challenged sex offender conditions. (Doc. 83 at 4.)

**II.  Assuming sex offender programming requirements implicate the Eighth Amendment, the individual-capacity claims should be dismissed because Plaintiff has not plausibly alleged that Defendant Deml was personally involved in the alleged constitutional violations.**

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (internal quotation marks omitted); *see Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135–36 (2d Cir. 2013) (holding that a plaintiff proceeding under § 1983 must allege facts showing defendants' direct and personal involvement in alleged constitutional deprivation); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).

Plaintiff again alleges that Defendant Deml violated his Eighth Amendment rights by modifying a court order to force him to participate in sex offender programing and by imposing "sex offender conditions" of supervision. (Doc. 81 at 3, 6.) Additionally, Plaintiff alleges that Defendant Deml violated Plaintiff's due process rights by continuing "to brand [him] as a sex offender." (*Id.* at 4.) To support his due process claim, Plaintiff asserts that Defendant Deml placed an ankle monitor on him "as a symbol to publicize that he is a sex offender." (*Id.* at 7.)

Plaintiff's individual-capacity claims against Defendant Deml should be dismissed because he has not plausibly alleged Defendant Deml's personal involvement in the alleged Eighth Amendment and Due Process Clause violations. Plaintiff's allegations lack sufficient specificity demonstrating that Defendant Deml was personally involved in the decision to have Plaintiff participate in the sex offender treatment program, to impose sexual risk-related conditions of supervision, or to require Plaintiff to wear an ankle monitor.[4]

---

[4] Plaintiff previously alleged that DOC employee Hannah Pfadenhauer determines who receives sex offender programming. (Doc. 12 at 15, ¶ 113; *see also* Doc. 81-2, Exh. B at 11.)

11

To the extent Plaintiff is alleging that Defendant Deml is liable under a theory of supervisor liability, i.e., pursuant to his role as the Commissioner responsible for the operation of the DOC, these allegations are legally insufficient. Supervisor liability in a § 1983 action cannot rest merely on a theory of respondeat superior. *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003); *see also Tangreti v. Bachmann*, 983 F.3d 609, 617 (2d Cir. 2020) ("[A] conception of supervisory liability—according to which a supervisor may be held liable based on a lesser showing of culpability than the constitutional violation requires—is inconsistent with the principle that officials may not be held accountable for the misdeeds of their agents." (internal quotation marks omitted)). Mere "linkage in the prison chain of command" is insufficient to implicate a state commissioner of corrections in a § 1983 claim. *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985); *see also Wright*, 21 F.3d at 501 (noting that a defendant in a § 1983 action may not be held liable for constitutional violations merely because he held a high position of authority). In other words, "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution . . . [t]he violation must be established against the supervisory official directly." *Tangreti*, 983 F.3d at 618 (citations and internal quotation marks omitted).

Plaintiff's Second Amended Complaint does not plausibly allege Defendant Deml's personal involvement in the alleged violations. I therefore recommend that Defendant's Motion to Dismiss be GRANTED with respect to Plaintiff's individual-capacity claims against Defendant Deml.

### III. Leave to Amend

District courts should not dismiss the complaint of a self-represented party without granting leave to amend at least once "when a liberal reading of the complaint gives any

indication that a valid claim might be stated." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (internal quotation marks omitted). A court need not grant leave to amend, however, if "amendment would be futile." *Garcia v. Super. of Great Meadow Corr. Facility*, 841 F.3d 581, 583 (2d Cir. 2016) (per curiam) (cautioning that a district court "should not dismiss a pro se complaint without granting leave to amend at least once, unless amendment would be futile" (internal quotation marks omitted)). Where amendment of the pleading is "unlikely to be productive," the Court may deny leave because further amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend.").

      In this case, the previous R&R set forth the relevant legal standards to bring an action under § 1983. Specifically, the Court explained that Eleventh Amendment sovereign immunity bars official-capacity claims against a State actor for money damages. (Doc. 75 at 12–15.) The Court also explained that Plaintiff must plausibly allege the personal involvement of a defendant for an individual-capacity claim. (*Id.* at 15.) Plaintiff received an opportunity to amend his complaint to attempt to state his claims under these standards. (Doc. 78.) Plaintiff's Second Amended Complaint has not remedied the deficiencies identified in his Amended Complaint. As further leave to amend is "unlikely to be productive," I recommend that leave to amend the Second Amended Complaint be denied as futile. *Ruffolo*, 987 F.2d at 131; *see also Coleman v. BrokersXpress, LLC*, 375 F. App'x 136, 137 (2d Cir. 2010) (summary order) (affirming dismissal of *pro se* plaintiff's complaint without leave to amend when the court afforded the plaintiff "one opportunity to amend the complaint, and [he] made no specific showing as to how he would cure the defects that persisted if given a second opportunity to amend").

13

**Conclusion**

For these reasons, I recommend that Plaintiff's Motion for Leave to File an Amended Complaint (Doc. 81) be GRANTED, and that the Motion be construed as Plaintiff's Second Amended Complaint. I further recommend that Defendant's Motion to Dismiss (Doc. 83) be GRANTED. If the Court adopts this Report and Recommendation, I also recommend that the Court deny Plaintiff further leave to amend.

Dated at Burlington, in the District of Vermont, this 9th day of January 2026.

*/s/ Kevin J. Doyle*
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections that shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate[] [judge's] decision." *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (quoting *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d Cir. 1989)).